﻿Citation Nr: 19158972
Decision Date: 07/30/19 Archive Date: 07/30/19

DOCKET NO. 10-40 994
DATE: July 30, 2019

REMANDED

Entitlement to service connection for cardiomyopathy, to include as secondary to service-connected diabetes mellitus, is remanded.

Entitlement to service connection for atrial fibrillation, to include as secondary to service-connected diabetes mellitus, is remanded.

REASONS FOR REMAND

The Veteran had active service from August 1968 to June 1970, including service in the Republic of Vietnam. The Veteran’s decorations include the Combat Action Medal. 

The Veteran testified at a hearing before the undersigned in May 2014. A transcript of the hearing has been associated with the claims file.

1. Entitlement to service connection for cardiomyopathy, to include as secondary to service-connected diabetes mellitus, is remanded.

2. Entitlement to service connection for atrial fibrillation, to include as secondary to service-connected diabetes mellitus, is remanded.

In VA treatment records dated in October 2018, it was reported that University of Iowa Hospitals and Clinics (UIHC) Heart and Vascular Center made changes to the Veteran’s cardiology medications. The changes were reported in the VA records and it was noted that there were notes from the visit at UIHC along with labs and test results. The VA record indicates that the note was sent for scanning into VISTA and forwarding to the Veteran’s heart failure provider. Additional VA treatment records note that cardiac treatment records from UIHC have been scanned into VISTA. See VA treatment note dated August 2018. The Veteran submitted a copy of page 1 of 2 of his daily medication schedule from UIHC dated in October 2018. However, review of the claims file does not reveal that treatment records regarding the Veteran from UIHC, dated since to November 2017, have been obtained and associated with the claims file.

The Veteran has been noted to receive private treatment from a Dr. D.F. at McFarland Clinic in Ames, Iowa. See, e.g., VA Treatment Record January 2019. Review of the claims file reveals treatment records from McFarland Clinic dated to 2006, a letter including blood test results dated in July 2009, and a letter from McFarland Clinic dated in January 2010 that indicates that the Veteran is being followed for neuropathy of the legs. However, complete treatment records from McFarland Clinic have not been obtained and associated with the claims file. 

The Veteran has reported additional private treatment providers, including Mercy Hospital and Dr J.G. See Veteran’s Application for Increased Compensation Based on Unemployability dated December 2018.

It is noted that in May 2019 the Veteran was sent a notice letter regarding an unrelated claim that asked for the Veteran to provide any treatment records related to claimed condition(s) and/or provide VA authorization to obtain records. There is no indication of a response to this request. However, the Board notes that letter identifies a different disability, squamous cell carcinoma, for which the Veteran had submitted a claim in April 2019. In addition, VA treatment records associated with the claims file subsequent to the notice letter indicate continued treatment with non-VA providers. See VA treatment record dated January 2019 (associated with claims file in May 2019).

On remand, attempts must be made to obtain and associate with the claims file the private treatment records scanned into VISTA, including those identified in August 2018 and October 2018 VA treatment records. In addition, the Veteran must be asked to identify all private treatment providers and to provide authorization for VA to attempt to obtain treatment records from all identified providers, to include UIHC, McFarland Clinic, and Mercy Hospital, and Dr. J.G. Thereafter, attempts must be made to obtain complete treatment records regarding the Veteran from all identified private providers for which authorization has been provided. See 38 C.F.R. § 3.159.

In the prior January 2019 remand, the Board of Veterans’ Appeals (Board) noted that negative VA addendum opinions were obtained in October 2017 and July 2018 pursuant to a prior Board remand. The Board noted that the opinions essentially found that his cardiomyopathy had not been aggravated by his diabetes mellitus in part because his diabetes mellitus had been well controlled by diet and exercise only and that any evidence of insulin did not represent the overall actual severity of his diabetes. As to atrial fibrillation, the opinions indicated that this had been the result of his cardiomyopathy but that since the Veteran had a heart transplant, he no longer had atrial fibrillation. The evidence shows that the Veteran underwent a heart transplant in June 2017. Thereafter, the Board found that VA treatment records showed a prescription for insulin injections and Glipizide and a VA diabetes mellitus examiner noted that the Veteran’s diabetes was managed by restricted diet, prescribed oral hypoglycemic agents and one insulin injection per day. The Board further noted that it was unclear whether the Veteran continued to have cardiomyopathy and/or atrial fibrillation disabilities subsequent to the heart transplant and that the pertinent question is whether any current disability related to atrial fibrillation and/or cardiomyopathy remains, and if so, whether it has been aggravated by the worsened diabetes mellitus. The Board, therefore, found that addendum opinions were needed.

In the remand order, the Board stated that the examiner must address whether, following the heart transplant, any current disability related to atrial fibrillation and/or cardiomyopathy remained and, if so, whether such disability has been aggravated by diabetes mellitus. The examiner was further informed that aggravation is defined as any worsening of a nonservice-connected disability by a service-connected disability and that permanent worsening need not be shown.

Pursuant to the Board remand, a VA addendum opinion was obtained in February 2019. The examiner rendered the opinion that although diabetes mellitus was a risk factor for ischemic heart disease, the Veteran had a non-ischemic cardiomyopathy which led to his heart transplant. The examiner noted that the Veteran’s diabetes mellitus had now worsened did not affect the heart which had cardiomyopathy which was treated with transplant. The examiner noted that review of the HgB A1C’s from June 2006 to June 2017 ranged from 4.6% to 6.0%, well below the goal of an A1C less than 7% in a diabetic. The methods/treatments were noted to be less important than the A1C values. The examiner continued to note that the Veteran was diagnosed with non-ischemic cardiomyopathy long before he was diagnosed with diabetes. The examiner noted that the Veteran was started on treatment for his diabetes with insulin in June 2017 when he had the heart transplant. The examiner noted that the Veteran no longer had cardiomyopathy with his transplanted heart. It was concluded that the Veteran’s diabetes mellitus would not have permanently aggravated or worsened his non-ischemic cardiomyopathy in his previous heart.

Regarding atrial fibrillation, the examiner stated that an EKG documented the disorder more than a decade prior to his diabetes mellitus diagnosis and treatment. The examiner noted that the Veteran no longer had atrial fibrillation with his transplanted heart. The examiner found that it was less likely as not that his diabetes mellitus permanently aggravated the atrial fibrillation he had in his previous heart.

The Board finds that the VA addendum opinions do not comply with the request of the prior remand. The Board notes that the examiner, in part, relies upon the Veteran’s cardiomyopathy predating the diagnosis and treatment of diabetes mellitus. Although the examiner noted that the Veteran’s A1C’s were less than the recommended level for diabetics prior to the Veteran’s heart transplant, there is no explanation on whether and why a lesser A1C could not have aggravated the Veteran’s cardiomyopathy. Regarding atrial fibrillation, the examiner relied solely upon the existence of atrial fibrillation prior to a diagnosis for rationale that the diabetes mellitus did not aggravate the disability. Furthermore, although the prior Board remand defined aggravation as any worsening of a nonservice-connected disability by a service-connected disability and stated that permanent worsening need not be shown, regarding both claimed disabilities, the examiner rendered the opinion based upon the standard of permanently aggravated. Therefore, the addendum opinions do not comply with the prior Board remand directives and are in adequate. Stegall v. West, 11 Vet. App. 268 (1998).

As the Board is remanding the claims for additional treatment records to be obtained and associated with the claims file, and as the opinions requested by the Board in the prior remand are inadequate, the Board finds that the Veteran must be afforded another VA examination regarding the etiology of his disabilities.

Additional evidence was received and associated with the claims file subsequent to the March 2019 Supplemental Statement of the Case. As the Board is remanding the claim for further development, the Agency of Original Jurisdiction (AOJ) will have an opportunity to consider this evidence in the first instance. 38 C.F.R. §§ 19.31, 19.37, 20.1304.

As the claims are being remanded for additional development, attempts must be made to obtain and associate with the claims file any additional VA treatment records. See 38 C.F.R. § 3.159.

The matters are REMANDED for the following action:

1. Obtain the Veteran’s VA treatment records for the dated since May 2019.

2. Attempts must be made to obtain and associate with the claims file the private treatment records scanned into VISTA, including those identified in August 2018 and October 2018 VA treatment notes.

3. Ask the Veteran to complete a VA Form 21-4142 for all private providers who have treated him for his heart, including University of Iowa Hospitals and Clinics (UIHC) Heart and Vascular Center, McFarland Clinic in Ames, Iowa, Mercy Hospital, and Drs. J.G. Make two requests for the authorized records from all identified providers, including from UIHC for records dated since November 2017, and from McFarland Clinic in Ames, Iowa, Mercy Hospital, and Drs. J.G., unless it is clear after the first request that a second request would be futile.

4. Thereafter, schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any cardiomyopathy and atrial fibrillation present both before and after the Veteran’s cardiac transplant. The examiner must opine whether it is at least as likely as not any cardiomyopathy and atrial fibrillation present both before and after the Veteran’s cardiac transplant is related to an in-service injury, event, or disease. The examiner must address the following:

(a) Is it at least as likely as not (50 percent probability or more) that the Veteran’s cardiomyopathy was aggravated by his service-connected diabetes mellitus?

(b) Is it at least as likely as not (50 percent probability or more) that the Veteran’s atrial fibrillation was aggravated by his service-connected diabetes mellitus?

In responding to these questions, the examiner must address whether, following the heart transplant, any current disability related to atrial fibrillation and/or cardiomyopathy remains. If so, the examiner should address whether such disability has been aggravated by diabetes mellitus.

Aggravation is defined as any worsening of a nonservice-connected disability by a service-connected disability. Permanent worsening need not be shown.

A complete rationale must be provided for any opinion offered.

 

ROBERT C. SCHARNBERGER

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Robert J. Burriesci, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.